[No. 30333-1-III.   Division Three.   October 18, 2012.]

EXCELSIOR MORTGAGE EQUITY FUND II, LLC, *Respondent*, v.
STEVEN F. SCHROEDER, *Appellant*.

*Matthew F. Pfefer*, for appellant.

*Phillip J. Haberthur* (of *Schwabe Williamson & Wyatt*), for respondent.

¶1 SIDDOWAY, J. — When a landowner fails to remove personal property following foreclosure of his real property and a determination that he is in unlawful detainer, does a trial court act within its jurisdiction in authorizing the purchaser of the land to sell or dispose of the personal property for the former landowner's benefit? We hold that it does, affirm the reasonable postjudgment order entered by the court in this case, and award Excelsior Mortgage Equity Fund II LLC its attorney fees.

## FACTS AND PROCEDURAL BACKGROUND

¶2 This is the fourth time these parties and this dispute have reached this court. We recount only the limited background relevant to this appeal.[1]

¶3 Steven Schroeder formerly owned a 200-acre ranch in Stevens County. He obtained a loan from Excelsior that was secured by a deed of trust against the real property.

---

[1] For additional detail, see *Schroeder v. Excelsior Management Group, LLC*, noted at 162 Wn. App. 1027, 2011 WL 2474337, 2011 Wash. App. LEXIS 1451, *review granted*, 173 Wn.2d 1013 (2012); *Schroeder v. Haberthur*, noted at 164 Wn. App. 1012, 2011 WL 4599661, 2011 Wash. App. LEXIS 2309, *review granted*, 173 Wn.2d 1020 (2012); and *Excelsior Mortgage Equity Fund II, LLC v. Schroeder*, noted at 166 Wn. App. 1004, 2012 WL 210921, 2012 Wash. App. LEXIS 108, *petition for review filed*, No. 87057-8 (Wash. Feb. 28, 2012).

When he defaulted in payment of the loan, Excelsior filed an action to judicially foreclose its deed of trust. It later negotiated to foreclose nonjudicially. The nonjudicial foreclosure process culminated in a trustee's sale on February 19, 2010, at which Excelsior purchased the property. Excelsior was entitled to possession 20 days later, on March 11. RCW 61.24.060(1).

¶4 Before borrowing from Excelsior, Mr. Schroeder had owned the ranch for decades. Over the years, he accumulated and stored an enormous amount of personal property on it, including hundreds of old vehicles, bicycles, vehicle and bicycle parts, tires, and household appliances. He also kept animals on the property, including two dozen cows, several horses, and a large bull.

¶5 Excelsior agreed following its purchase at the trustee's sale to extend the time for Mr. Schroeder to remove his personal property and animals and for Mr. Schroeder's tenant, Anthony Bell, to vacate a mobile home that he rented on the property. It granted them an additional three weeks' occupancy, to April 1. On March 10, Mr. Schroeder obtained an estimate from a moving company of the cost of removing his personal property. The company estimated that to remove what it was capable of moving would require "approximately 4 people[,] 2 straight trucks per day . . . for a minimum of 90 days," explaining that its estimate did not include "the cars and many items that we are just prohibited to move." Clerk's Papers (CP) at 22. It estimated the cost of its partial removal of the property at $15,750 plus $3,000 in packing material.

¶6 April 1 arrived, and Mr. Schroeder and Mr. Bell had not enlisted the moving company's services or otherwise vacated the property. On April 30, Excelsior filed a complaint for unlawful detainer. The trial court eventually entered summary judgment in Excelsior's favor and entered a final order and judgment on December 7. Its order adjudged Mr. Schroeder to be in unlawful detainer and stated that Excelsior "is granted immediate possession of

the Premises." CP at 319. It also provided that a writ of restitution "should be issued to the county sheriff directing him to deliver possession of the Premises to the Plaintiff." *Id.*

¶7 An inspection by Excelsior in the spring revealed that Mr. Schroeder had made few, if any, attempts to remove his property and animals. Its manager's chance encounter with Mr. Schroeder during the inspection confirmed that Mr. Schroeder continued to claim ownership to the personal property; according to the manager, Mr. Schroeder "even went so far as to question whether we had entered any of the buildings and stolen anything." CP at 14.

¶8 The unlawful detainer act, chapter 59.12 RCW, does not spell out a procedure by which Excelsior could sell or dispose of Mr. Schroeder's property. Excelsior explains on appeal that it did not pursue the writ of restitution ordered by the court because Mr. Schroeder and Mr. Bell were no longer living at the property, implying that removal of the two individuals would have been the only reason for pursuing execution of the writ. Seeking to avoid any further litigation with Mr. Schroeder, Excelsior identified provisions of the Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW, which—while not applicable by its terms—nonetheless address how a landlord may dispose of personal property left behind by an evicted tenant. It decided to ask that the court adapt that procedure for its disposal of Mr. Schroeder's property, later explaining:

> The Residential Landlord-Tenant Act of 1973 was enacted in order to provide residential tenants greater protection from landlords. Because these statutes provide the highest level of protection for tenants, it is more than reasonable for Excelsior to follow the procedures under the residential act for sale/ disposal of Schroeder's personal property. By doing so, Excelsior gives this former owner the highest level of protection available, despite the fact that he is not entitled to that protection by statu[t]e.

CP at 6.

¶9 On March 25, 2011, Excelsior sent Mr. Schroeder what it entitled a "Notice of Sale or Disposal of Abandoned Property," providing Mr. Schroeder 45 days, or until May 12, to remove anything of value he had stored on the property. Mr. Schroeder took no action to comply.

¶10 On May 24, Excelsior moved the trial court for an order allowing it to dispose of the personal property remaining on the property. Mr. Schroeder opposed the motion, contending that "this Court has no authority to grant the Plaintiff's Motion to dispose of Mr. Schroeder's personal belongings." CP at 30. The trial court granted Excelsior's motion. Its order, entered on September 26, authorized Mr. Schroeder to enter the property until October 15 "only for purposes of removing his personal property and animals." CP at 141. Its order excluded him from the property thereafter and, with respect to any property remaining on the property that was thereafter sold, ordered:

> Any proceeds obtained from the sale of personal property or animals belonging to Steven F. Schroeder shall be applied first toward Plaintiff's costs associated with storing, removing, and/or selling the property, and second toward off-setting the outstanding judgment in this case.

CP at 142.

¶11 After Mr. Schroeder's motion for partial reconsideration was denied, he timely appealed.[2]

## ANALYSIS

### I

¶12 The deed of trust act, chapter 61.24 RCW, provides that the purchaser at a trustee's sale is entitled to

---

[2] In filing his notice of appeal, Mr. Schroeder posted a $500 bond. Excelsior objected to it as insufficient. On November 15, the trial court agreed with Excelsior and set the bond amount at $24,400. Mr. Schroeder evidently did not post the required bond. We understand that Excelsior has proceeded to dispose of at least some of the property, but the extent of its action taken on the court's order is outside the record. No one has argued that the appeal is moot.

possession on the 20th day following the sale and "shall also have a right to the summary proceedings to obtain possession of real property provided in chapter 59.12 RCW," the unlawful detainer act. RCW 61.24.060(1). RCW 59.12.170 provides that if the trial court in a commercial unlawful detainer action finds in favor of the plaintiff, "judgment shall be entered for the restitution of the premises." In those cases where a defendant found in unlawful detainer does not voluntarily vacate, the usual remedy for restoring the plaintiff's possession is to enforce the judgment "for the possession of the premises," RCW 59.12.170, by causing the county sheriff to execute a writ of restitution.

¶13 The sheriff's authority under a writ of restitution extends to removing a defendant's personal property from the premises. *See Christensen v. Hoover*, 643 P.2d 525, 528 (Colo. 1982) (finding it to be the officer's duty under a writ of restitution "not only to remove the tenant, but also to remove the tenant's personal property and effects" where unlawful detainer statute provided that landlord was entitled to restitution, or full possession, of the premises); *cf. Chung v. Louie Fong Co.*, 130 Wash. 154, 156, 226 P. 726 (1924) ("[the plaintiff] remaining in possession, the sheriff dispossessed him, putting his personal property in the road adjacent to the premises"); *Johnson v. Nelson*, 146 Wash. 500, 501, 263 P. 949 (1928) (following service of the writ of restitution and the occupant's failure to vacate, the sheriff "secured the services of some men and removed the belongings of respondents from the premises into the highway near by"); RCW 36.28.010(3) (sheriff is the "conservator of the peace of the county" and shall execute "the process and orders of the courts of justice or judicial officers . . . according to law"), .050 ("Any sheriff . . . may require an indemnifying bond of the plaintiff in all cases where he or she has to take possession of personal property."). In this connection, Excelsior's implicit position that a writ of res-

titution authorizes a sheriff to assist in removing only people, not property, is mistaken.[3]

¶14 But while the sheriff can remove or oversee the landowner's removal of a dispossessed defendant's personal property pursuant to a writ of restitution, it is understandable that Excelsior would not regard a customary writ of restitution as a practical or adequate means of enforcing Excelsior's right of possession. The 90-day, 4-man, $15,000 estimate for *partial* removal that Mr. Schroeder received from the moving company is compelling evidence that the writ procedure was inadequate. And, as described by Excelsior's manager:

> The 200 acre property remained littered with old vehicles (approximately 200 to 300 of them), most of which were rusted shells that showed obvious signs of having been there for decades. In fact, many had sunk deeply into the soil. All appearances suggested that the vehicles were little more than rusted scrap with little to no value, especially given the amount of work and associated cost that would be required to remove them from the Premises. In addition, there were hundreds of old and rusted bicycles, vehicle and bicycle parts, tires, and miscellaneous junk, all of which appeared to be old, dilapidated, and of little or no value. The vast majority of the items were unprotected from the elements and badly damaged by decades of neglect.

---

[3] Mr. Schroeder is equally mistaken in his position that Excelsior's failure to cause execution of the writ means that he—not Excelsior—remained entitled to legal possession of the real property, a conclusion that he incorrectly draws from the statement in *Port of Longview v. International Raw Materials, Ltd.*, 96 Wn. App. 431, 446, 979 P.2d 917 (1999) that "[a] writ of restitution does not have any immediate effect on the tenant's property interests." This statement in *International Raw Materials* refers to service of a prejudgment writ, which cannot be executed until a defendant has had an opportunity to be heard. The decision nowhere states or implies that execution of the writ is essential to establishing the plaintiff's right of possession. RCW 59.12.090 states that the plaintiff "may" apply for a writ of restitution. By its plain terms, the party entitled to restitution of the premises is not required to obtain execution of a writ of restitution, and parties found to be in unlawful detainer often vacate without being compelled to do so by the county sheriff. While a writ of restitution is a tool for securing compliance with the judgment, it is the judgment itself that grants legal possession to the landowner.

CP at 13. Yet Excelsior was faced with Mr. Schroeder's position these items were his personal property, in which he claimed a continuing interest. Under these circumstances, Excelsior reasonably sought an alternative to enlisting the Stevens County sheriff to supervise removal of Mr. Schroeder's property to the county's right of way on an adjacent highway.

¶15 The process for disposing of property ordered by the court was largely adapted, as suggested by Excelsior, from a residential landlord's rights and duties to store, sell, or dispose of personal property left behind by an evicted tenant. *See* RCW 59.18.312. Mr. Schroeder does not identify any respect in which the process was unreasonable; as Excelsior points out, Mr. Schroeder was ultimately afforded 602 days to remove his personal property following the trustee's sale. Br. of Resp't at 20. Instead, Mr. Schroeder argues that the trial court lacked jurisdiction to order the procedure in an unlawful detainer proceeding that was not subject to the Residential Landlord-Tenant Act.

¶16 An unlawful detainer action is a "narrow one, limited to the question of possession and related issues such as restitution of the premises and rent." *Munden v. Hazelrigg*, 105 Wn.2d 39, 45, 711 P.2d 295 (1985). Mr. Schroeder argues that the trial court lacked jurisdiction to entertain what he characterizes as a claim of "abandonment" that Excelsior was raising for the first time by its postjudgment motion. Determining subject matter jurisdiction is a question of law reviewed de novo. *ZDI Gaming, Inc. v. Wash. State Gambling Comm'n*, 173 Wn.2d 608, 624, 268 P.3d 929 (2012) (J.M. Johnson, J., dissenting).

¶17 Mr. Schroeder characterizes the term "abandon" as used in the court's order[4] as referring to the common law defense to conversion. Relying on a 63-year-old Kentucky

---

[4] The court entered a finding that because Mr. Schroeder had not removed his personal property and animals despite more than reasonable notice, he "has *abandoned* any personal property or belongings remaining on the Real Property after October 15, 2011," and ordered that any personal property not removed by

decision, *Ellis v. McCormack*, 309 Ky. 576, 578, 218 S.W.2d 391 (1949), he argues that to prove abandonment, Excelsior must prove his "(1) voluntary relinquishment of possession, and (2) intent to repudiate ownership."

¶18 In *Ellis*, the lessor of a coal mine sold coal slack left at its property by a former lessee, who had quit all mining operations and terminated its lease seven years earlier. The lessee nonetheless sued to recover the proceeds of the lessor's sale of the slack, arguing that the lessor had converted property that belonged to the lessee. The lessor defended on the basis that the slack had been abandoned by the lessee and that it was therefore entitled to sell the slack for its own account. The former owner of property that is "abandoned" in this sense loses any ownership interest it once had. *State v. Kealey*, 80 Wn. App. 162, 171-72, 907 P.2d 319 (1995).

¶19 Mr. Schroeder also argues that if Excelsior's motion is not a claim for "abandonment," it must necessarily have been some other, new cause of action but was fatally vague, since he was not able to identify affirmative defenses or conduct discovery.

¶20 Mr. Schroeder's error in both cases is in construing Excelsior's motion as seeking to establish any new rights or duties at all. It was not. It was merely seeking an order setting forth a framework for enforcing the judgment the court had already entered.

¶21 It is clear from the face of the order that the words "abandon" or "abandoned" were used colloquially by the trial court and do not reflect any finding by the court that Mr. Schroeder *intended* to relinquish ownership. And Excelsior never asked for a determination that what it characterized as Mr. Schroeder's "junk" belonged to it. The trial court's order did not operate to deprive Mr. Schroeder of ownership. To the contrary, it gave Mr. Schroeder an additional 19 days to remove "*his* personal property and ani-

---

October 15 "will be considered *abandoned* and [Excelsior] may proceed with disposing of all remaining items at that time." CP at 141 (emphasis added).

mals" from the property. CP at 141 (emphasis added). If his belongings were not removed, the order denied Mr. Schroeder further access to the real property and authorized Excelsior to sell or otherwise dispose of the personal property, but with all proceeds to be applied to costs for which Mr. Schroeder would be responsible or to his judgment liability—in other words, for Mr. Schroeder's benefit. *Cf. Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 722, 225 P.3d 266 (2009) (there can be no claim of conversion where the owner declines to retrieve its property from a party in possession who makes no claim that the property is its own).

¶22 Rather than assert any new claim or different rights, Excelsior's motion simply asked the court to approve a procedure by which it could effectuate the judgment to which it had already proved it was entitled: a judgment "for the restitution of the premises." RCW 59.12.170. The right to exclude others is an essential stick in the bundle of property rights. *City of Sunnyside v. Lopez*, 50 Wn. App. 786, 795 n.7, 751 P.2d 313 (1988) (citing *Kaiser Aetna v. United States*, 444 U.S. 164, 179-80, 100 S. Ct. 383, 62 L. Ed. 2d 332 (1979)); *and see Manufactured Hous. Cmtys. of Wash. v. State*, 142 Wn.2d 347, 364, 13 P.3d 183 (2000) (the right of unrestricted use, enjoyment, and disposal is a substantial part of property's value (quoting *Ackerman v. Port of Seattle*, 55 Wn.2d 400, 409, 348 P.2d 664 (1960), *abrogated on other grounds by Highline Sch. Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 548 P.2d 1085 (1976))).

¶23 The request for an order effectuating the court's judgment for restitution of the premises to Excelsior did not stray beyond the trial court's narrow jurisdiction in an unlawful detainer action. "Although the court [in an unlawful detainer action] does not sit as a court of general jurisdiction to decide issues unrelated to possession of the subject property, it may resolve any issues necessarily related to the parties' dispute over such possession." *Port of Longview v. Int'l Raw Materials, Ltd.*, 96 Wn. App. 431, 438,

979 P.2d 917 (1999) (citation omitted). "When jurisdiction is . . . conferred on a court or judicial officer all the means to carry it into effect are also given." RCW 2.28.150. The plain and principal authority of the court in an unlawful detainer proceeding is to determine who has the right of possession of real property and to restore that person to possession. While the unlawful detainer provisions identify the writ of restitution as the ordinary means for enforcing the court's award of possession, they do not prescribe the terms of the writ or deprive the court of authority to enforce its judgment by other means.

¶24 The trial court had jurisdiction to enter the order, which is affirmed.

## II

¶25 Both parties request attorney fees on appeal as prevailing parties under RCW 4.84.330, relying on an attorney fee provision in their deed of trust. Excelsior is the prevailing party. A party may be awarded contractual attorney fees at the trial and appellate level under any law that grants the right to recover them. RAP 18.1.

¶26 Washington law generally provides for an award of attorney fees when authorized by contract, a statute, or a recognized ground of equity. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004); *Bingham v. Lechner*, 111 Wn. App. 118, 133-34, 45 P.3d 562 (2002) (stating that the party that prevails in a proceeding to foreclose a deed of trust is entitled to an award of fees if the deed of trust provides for such an award). RCW 4.84.330 addresses a different circumstance: it extends the right to recover fees to a prevailing party whose contract with its adversary contains an attorney fee provision, but one that is unilateral, operating only if its adversary prevails. As to those contracts, RCW 4.84.330 provides a statutory award that, as a practical matter, makes the unilateral contractual fee provision bilateral.

¶27 The attorney fee provision in Mr. Schroeder's deed of trust in favor of Excelsior is bilateral, so the contractual right, rather than RCW 4.84.330, is the source of any entitlement to fees. *Cornish Coll. of Arts v. 1000 Virginia Ltd. P'ship*, 158 Wn. App. 203, 231, 242 P.3d 1 (2010) ("When a contract includes a bilateral attorney fees provision, 'it is the terms of the contract to which the trial court should look to determine if such an award is warranted.'" (quoting *Kaintz v. PLG, Inc.*, 147 Wn. App. 782, 790, 197 P.3d 710 (2008))), *review denied*, 171 Wn.2d 1014 (2011). The fee provision in the parties' deed of trust states:

> In the event suit or action is instituted to enforce or interpret any of the terms of this Trust Deed, including, but not limited to, any action or participation by Borrower as a debtor in, or in connection with, a case or proceeding under the Bankruptcy Code or any successor statute, the prevailing party shall be entitled to recover all expenses reasonably incurred at, before and after trial and on appeal whether or not taxable as costs, including, without limitation, attorney fees.

CP at 222. The parties' mutual requests for fees reflect their agreement that the action below is one that was "instituted to enforce . . . the terms of this Trust Deed." *Id.*

¶28 In his reply brief, Mr. Schroeder belatedly argues that we should deny Excelsior's request for fees on account of insufficient argument under RAP 18.1, as well as its mistaken reliance on RCW 4.84.330. Excelsior devoted a section of its brief to its fee request, cited RAP 18.1, and placed its ultimate reliance on its contractual right to fees under its deed of trust and promissory note from Mr. Schroeder. Its mistaken additional reliance on RCW 4.84-.330 was not unusual, was a mistake also made by Mr. Schroeder in his opening brief, and is no reason to deny its otherwise sufficient fee request.

¶29 Excelsior's request for attorney fees on appeal is granted, subject to compliance with RAP 18.1(d).

¶30 Affirmed.

KORSMO, C.J., and KULIK, J., concur.

Reconsideration denied December 5, 2012.

Review denied at 177 Wn.2d 1005 (2013).