IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STEVEN F. SCHROEDER, a married man dealing with his sole and separate property, | ) ) ) | No. 33336-1-III (consolidated with No. 34551-3-III) |
| Appellant, | ) ) | |
| v. | ) ) | |
| PHILLIP J. HABERTHUR, as trustee of a deed of trust, EXCELSIOR MANAGEMENT GROUP, LLC, an Oregon limited liability company, EXCELSIOR MORTGAGE EQUITY FUND II, LLC, an Oregon limited liability company, JAMES HANEY, and CLS MORTGAGE, INC., a Washington corporation, | ) ) ) ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Respondents. | ) | |

KORSMO, J. — This is the fifth appeal to reach this court resulting from a deed of

trust issued in 2009.[1] Since the trial court complied with the Washington Supreme

---

[1] *Excelsior Mortg. Equity Fund II, LLC v. Schroeder*, 171 Wn. App. 333, 287 P.3d 21 (2012), *review denied*, 177 Wn.2d 1005, 300 P.3d 416 (2013); *Excelsior Mortg. Equity Fund II, LLC v. Schroeder*, noted at 166 Wn. App. 1004 (2012), *remanded*, 308 P.3d 634 (2013); *Schroeder v. Haberthur*, noted at 164 Wn. App. 1012 (2011), *rev'd sub nom. Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 297 P.3d 677 (2013) (*Schroeder* V); *Schroeder v. Excelsior Mgmt. Grp., LLC*, noted at 162 Wn. App. 1027 (2011), *rev'd*, 177 Wn.2d 94.

Court's directives in the most recent appeal, we trust this will be the last appeal. The primary issue presented by this current appeal is whether the deed of trust act (DTA), chapter 61.24 RCW, can be construed using definitions found in the Uniform Commercial Code (UCC), Title 62A RCW. It can. Agreeing with the trial court that growing or felling timber does not constitute farming, we affirm.

## FACTS

Details of the procedural history and the underlying factual dispute are necessary to place the trial court's ruling in context, although we will attempt to avoid unnecessary discussion of the previous actions. The land parcel in question, a 200 acre property near the city of Colville, was purchased by appellant Steven Schroeder's parents in 1959, and became his property in 1987 when he purchased the land from them. Mr. Schroeder also owns other large parcels of land immediately adjoining this parcel.

Respondent Excelsior Mortgage Equity Fund (Excelsior)[2] loaned Mr. Schroeder money in June 2007 and secured the loan by a deed of trust on the 200 acre parcel. An appraisal from May 2007 described the property as 75 percent "Ag and timberland," and

---

[2] During the pendency of this appeal, Excelsior Mortgage sold the parcel to Forested Habitats, LLC, which recently was substituted as a party respondent. We refer to the defendants/respondents by the name Excelsior in the body of this opinion for purposes of continuity and convenience.

valued the land at $675,000.[3] Mr. Schroeder operated a logging business from his home office and also used the parcel for a scrap metal operation; he stored hundreds of vehicles on the property and stored valuable scrap materials in the buildings on the parcel.[4]

Mr. Schroeder soon defaulted on the loan from Excelsior. *Schroeder* V, 177 Wn.2d at 99-100. Mr. Schroeder tried to contest the deed of trust on the basis that the parcel was agricultural land and that foreclosure could not be accomplished nonjudicially. *Id.* at 109. A new deed of trust issued and a new loan was renegotiated in early 2009 to cure the default. In that document, the parties stated that they agreed the land was not used for agriculture.

Mr. Schroeder soon defaulted on the 2009 loan, and the matter was set for nonjudicial foreclosure. Litigation ensued, but the trial court declined to block the sale. The nonjudicial foreclosure occurred, and the trustee conveyed a deed for the parcel to Excelsior Mortgage, a related company. Additional litigation continued as Mr. Schroeder sought damages and other relief. The trial court dismissed the actions, finding that Mr. Schroeder could not contest the nature of the property given the stipulation in the 2009 deed of trust.

---

[3] The appraisal describes the property as "gently sloping meadows mixed with timberland. There is an average amount of merchantable timber on the property along with five springs and three ponds. There are four barns, three sheds, and an older vacant farm house not valued in this appraisal." Ex. 2 at 1346.

[4] The vehicles and other scrap were at issue in the fourth appeal, *Excelsior Mortgage Equity Fund v. Schroeder*, 171 Wn. App. 133.

The Washington Supreme Court reversed, concluding that the requirements of the statute could not be waived by the parties. *Id.* at 106-07, 109. Agricultural land could not be foreclosed through the DTA's nonjudicial process. *Id.* at 105-07, 115. The case was remanded, with the requirement that "the trial court must hold a hearing to determine whether the property was primarily agricultural at relevant times." *Id.* at 115. The order dismissing Schroeder's ancillary damages claims also was reversed and remanded for discovery. *Id.* at 114-15.

A lengthy nonjury trial concerning the nature of the property was held over three days in February 2015 and resulted in a transcript of nearly 1,000 pages. The court heard from a number of witnesses. Mr. Schroeder testified that he kept a handful of pigs on the property and that cattle grazed among the timber on that property as well as on adjoining lands he owned on which he grew hay or other crops. He testified that he ran his scrap business from the property and that timber production and logging were occasional income sources for him. A Stevens County deputy assessor testified that 180 acres of the parcel had been classified for tax purposes as "designated forestland" since 2001. Report of Proceedings (RP) at 691-92. The remainder of the parcel was considered "improved." The forestland designation carried a greater tax break than property in the "farm and agricultural" classification.

Counsel for Mr. Schroeder argued that timber was a "crop" and that the contrary definition found in the current UCC did not apply to the earlier-adopted DTA. The trial

4

court, however, distinguished between "crop" and "timber," and ruled that the land was used "for timber, and . . . if there's an ag use, it's offset, if you will, by the storage of the cars and the, the scrapping business that was run here." RP at 953-54. In the course of its ruling, the court considered the UCC definitions argued by the parties, the tax designation, Mr. Schroeder's representation[5] on the deed of trust, and the uses Mr. Schroeder made of the property. The trial court gave primary importance to the classification of the land for tax purposes. RP at 945. The court entered formal findings of fact and conclusions of law in support of its ruling in April 2015. Mr. Schroeder appealed that ruling to this court.

In February 2016, the trial court granted summary judgment to Excelsior on the remainder of Schroeder's claims, but then granted reconsideration so that Schroeder could obtain new counsel. After Schroeder responded to the motion, the court again granted summary judgment to Excelsior on June 1, 2016, dismissing the remaining claims. Mr. Schroeder also appealed that decision to this court.

This court consolidated the two appeals. A panel heard the case without argument.

---

[5] The judge was convinced that Mr. Schroeder had not perjured himself in the deed of trust when he stated the land was not agricultural. He thought that Mr. Schroeder's characterization of the property evolved during the litigation.

## ANALYSIS

The primary issue is whether timber is a "crop" so that the forest land should have been considered agricultural property under the DTA. In light of our conclusion that timber is not a "crop," the issue we first address, we summarily consider the claim of error related to the summary judgment ruling on the damages claims.

There are a number of general principles that have play in this action. The initial case came to this court via appeal from a nonjury trial. We review a bench trial to determine whether substantial evidence supports the trial court's findings of fact. *In re Tr.'s Sale of Real Prop. of Brown*, 161 Wn. App. 412, 415, 250 P.3d 134 (2011). Substantial evidence is evidence sufficient to persuade a rational fair-minded person that the premise is true. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Unchallenged findings of fact are also verities on appeal. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). This court must then determine if those findings support the trial court's conclusions of law. *Dorsey v. King County*, 51 Wn. App. 664, 668-69, 754 P.2d 1255 (1988). This court reviews conclusions of law de novo. *Sunnyside*, 149 Wn.2d at 879-80.

The other half of this case arrived following summary judgment. An appellate court will review a summary judgment ruling de novo and consider the same evidence heard by the trial court, viewing that evidence in a light most favorable to the party responding to the summary judgment. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1

6

P.3d 1124 (2000). If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. *Id.* "A defendant in a civil action is entitled to summary judgment if he can show that there is an absence or insufficiency of evidence supporting an element that is essential to the plaintiff's claim." *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 169 Wn. App. 111, 118, 279 P.3d 487 (2012).

Questions of statutory interpretation are reviewed de novo. *State v. Bradshaw*, 152 Wn.2d 528, 531, 98 P.3d 1190 (2004). A court begins by looking at the plain meaning of the rule as expressed through the words themselves. *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 164 Wn.2d 310, 317, 190 P.3d 28 (2008). If the meaning is plain on its face, the court applies the plain meaning. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). Only if the language is ambiguous does the court look to aids of construction. *Id.* at 110-11. A provision is ambiguous if it is reasonably subject to multiple interpretations. *State v. Engel*, 166 Wn.2d 572, 579, 210 P.3d 1007 (2009).

The primary statute at issue, as it was before the Washington Supreme Court in *Schroeder* V, is RCW 61.24.030, which currently states in relevant part:

It shall be requisite to a trustee's sale:

. . . .

(2) That the deed of trust contains a statement that the real property conveyed is not used principally for agricultural purposes; provided, if the statement is false on the date the deed of trust was granted or amended to include that statement, and false on the date of the trustee's sale, then the deed of trust must be foreclosed judicially. Real property is used for

7

agricultural purposes if it is used in an operation that produces crops, livestock, or aquatic goods.

Additionally, RCW 61.24.020 provides in part that: "A deed of trust conveying real property that is used principally for agricultural purposes may be foreclosed as a mortgage."

Also at issue here is a definition from the secured transactions article of the UCC. In part, RCW 62A.9A-102(34), provides:

> "Farm products" means goods, <u>other than standing timber</u>, with respect to which the debtor is engaged in a farming operation and which are:
>     (A) Crops grown, growing, or to be grown, including:
>     (i) Crops produced on trees, vines, and bushes . . . .

(Emphasis added.)

*Timber is not a Crop*

The issue presented by the remand order was whether the land was principally used for agricultural purposes. To that end, the hearing, as well as the argument on appeal, turned on whether the land was used "in an operation that produces crops." RCW 61.24.030(2). The word "crops" is not defined in the DTA and is only inferentially defined by example in the UCC. Mr. Schroeder argues that it was error for the trial court to consider the current UCC definition—distinguishing "timber" from "crops"—because the definition was adopted two years after the DTA and could not have been intended by the legislature.

8

Mr. Schroeder is historically correct. On adoption in 1965, the DTA required a statement that the land subject to the deed of trust "is not used principally for agricultural or farming purposes." LAWS OF 1965, ch. 74, § 3; former RCW 61.24.030(2) (1965). The current version of this statute was adopted in 1998 when the "or farming" language was dropped and the definition of "agricultural purposes" was added. LAWS OF 1998, ch. 295, § 4. Also at that time, the legislature added the provision to RCW 61.24.020 clarifying that a deed of trust for agricultural land may be foreclosed through the judicial process. LAWS OF 1998, ch. 295, § 3.

Current RCW 62A.9A-102(34), adopted in 2000, distinguishes standing timber from crops. LAWS OF 2000, ch. 250, § 9A-102. In 1998, the UCC distinguished between crops and standing timber under contract for sale. *See* former RCW 62A.9-105(1)(h) (1998), last sentence ("'Goods'also includes standing timber which is to be cut and removed under a conveyance or contract for sale, the unborn young of animals and growing crops."). The distinction between standing timber and standing timber under contract for sale leaves room for Mr. Schroeder to argue that the timber on his own land that he was personally to harvest constituted a "crop" at the time the DTA was enacted in 1998. Such an argument presumes that the legislature wanted the UCC applied to DTA cases. If it does apply, then Mr. Schroeder loses because the 2000 amendments were in

9

place at the time of the 2009 deed of trust, resulting in timber not being included within the definition of "crop."[6]

Thus, the true issue in this case is whether the UCC definition applies to the DTA. For two reasons, we believe that the UCC definition should apply.

First, there is evidence that the legislature expected that the UCC would be applied to the DTA. Telling here is an Executive Summary prepared by the working group that drafted the 1998 amendments to the DTA. Although the Washington State Archives only maintains an earlier draft of the summary (dated January 16, 1998) among the Senate documents, a more complete version of the document, dated June 6, 1998 (and perhaps used for legal education[7] purposes), was presented to the trial court. An apparently similar version was extensively relied on by Division One of this court in *Gardner v. First Heritage Bank*, 175 Wn. App. 650, 664-70, 303 P.3d 1065 (2013).[8] Because our copy lacks an original source citation, we will reference the clerk's papers designation.

---

[6] It is for this reason that *Rainier Nat'l Bank v. Security State Bank*, 59 Wn. App. 161, 796 P.2d 443 (1990), is inapplicable. There the court applied a dictionary definition for the word "crops" under former RCW 62A.9-105(h) in the absence of a UCC definition, and concluded that Christmas trees were "crops" for purposes adjudging competing security interests in a Christmas tree farm. The 2000 UCC legislation has clarified that standing timber is not a crop. This case does not require us to determine if Christmas trees constitute standing timber or a crop.

[7] The formatting (index, captions, and pagination) suggest that the document may have been used in a deskbook or as a chapter of a lengthy continuing legal education (CLE) document.

[8] *Gardner* involved numerous issues relating to the DTA and nonjudicial foreclosure of a deed of trust governing a parcel of land that had been used, in part, for

The amendments to the agricultural exception to the DTA were among the most heavily debated changes made by the working group. Clerk's Papers (CP) at 51 (summary at 11A-6). The summary expressly states that the agricultural exception was amended with the pending UCC amendments in mind. CP at 52 (summary at 11A-7). Accordingly, this history suggests that the legislature anticipated that this section of the DTA would be construed in accordance with the UCC.[9]

Second, it is appropriate to use the UCC definition here since the article 9 definitions often will apply to agricultural land in other secured transaction settings. For instance, "farm products" are "goods" that can be the subject of an "agricultural lien." RCW 62A.9A-102(5), (34), (44). It would be confusing, it not completely contradictory, for "crops" to have one meaning under the secured transaction statutes and another meaning under the DTA. Given the significant overlap between mortgages and deeds of trust with the other types of secured transactions found in article 9, it is understandable that the legislature would desire similar meanings to be applied.

---

agricultural purposes. The court ultimately concluded that occasional pasturing of a few horses on the property did not constitute proof that the land was primarily used for agricultural purposes. 175 Wn. App. at 668-73.

[9] In addition, another section of the DTA adopted in 1998 expressly references a UCC provision, showing legislative desire to apply the UCC to the DTA. *See* RCW 61.24.020. It was not possible to use this tactic with respect to RCW 61.24.030 since the associated UCC provision had not yet been adopted.

11

Accordingly, we conclude that the trial court did not err in considering the current UCC definition of "crops" when construing the meaning of that term in the DTA. Substantial evidence supported the determination that Mr. Schroeder did not principally use the parcel for agricultural purposes. Over 90 percent of the land was granted a tax break due to its characterization as forest land rather than as agricultural land. Mr. Schroeder used the remainder of the land for his scrap business; only occasionally was the land used for grazing or other agricultural purposes. He represented to Excelsior, as he had to the tax assessor, that the land was not agricultural. Given all of this, the trial court understandably ruled that the property was not primarily used for agricultural purposes.

The vast weight of the evidence supports the trial court's ruling. It was proper to apply the DTA to the commercial transaction between Schroeder and Excelsior.

*Summary Judgment*

The ancillary claims for damages were dismissed on summary judgment one year after the trial on the nature of the land. Since those claims were largely resolved by the outcome of the bench trial, the court did not err in granting summary judgment.

The claims presented alleged violations of both the Consumer Protection Act (CPA), chapter 19.86 RCW, and the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601, as well as unconscionability and civil conspiracy. All were predicated, at least in part, on the allegation that the land parcel was agricultural and that Excelsior

12

knew that fact when it wrongly used the DTA to close out Schroeder's interest in the property. Since the trial court correctly determined that the property was not primarily used for agricultural purposes, Schroeder's claims necessarily failed.

To the extent that the CPA claim is based on any other theory of deception rather than the land's characterization, Schroeder failed to present evidence to support the theory. Accordingly, the trial court correctly determined that there were no material facts in dispute and properly granted summary judgment.

Excelsior has requested an award of attorney fees pursuant to the deed of trust since it has prevailed in this appeal. Our commissioner will consider a timely request that complies with RAP 18.1.

The judgments are affirmed.

Korsmo, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Pennell, J.

13