IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DENNIS SIERACKI and | ) | No. 35938-7-III |
| SALLY SIERACKI, husband and wife, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| CHARLES L. SHEELEY, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Dennis and Sally Sieracki appeal the trial court's award of a total

of $3,458.60 as reasonable attorney fees following their partially successful motion for

summary judgment in an action against Charles Sheeley. They do not assign error to the

trial court's failure to enter findings of fact and conclusions of law or ask us to remand so

that such findings and conclusions can be obtained. The only remedy they seek on appeal

is an order directing the trial court to award the full amount of fees they had requested.

Given the trial court's broad discretion in determining the amount of attorney fees

to be awarded and tenable bases for the amount of its award, we affirm.

FACTS AND PROCEDURAL BACKGROUND

In or before May 2002, Dennis Sieracki, Gerald Sheeley, and others petitioned Benton County to vacate a 60-foot wide right-of-way adjoining their properties that had been quitclaimed to the county in 1963. The county commissioners agreed and, by resolution, they vacated the right-of-way subject to easements being granted to certain utilities and to the owners of parcels served by the right-of-way. Mr. Sheeley and Larry and Malvina Goodwin were evidently the successors in interest to whoever quitclaimed the right-of-way to the county in 1963, because they became the owners of the 60-foot strip and the grantors of an easement for ingress, egress and utilities to themselves and the owners of four other parcels served by a road then existing within the right-of-way. Those owners included Dennis and Sally Sieracki.

In addition to executing an easement agreement, the owners of the six parcels executed a road maintenance agreement. The agreement provided that a "60-foot wide roadway" would be "maintained free of obstructions and noxious weeds with four (4) inches of base coarse gravel and two (2) inches crushed gravel surface." Clerk's Papers (CP) at 52. But no road maintenance expense could be incurred except upon a majority vote of the owners, and the gravel roadway contemplated by the agreement was not

constructed for 15 years. Instead, according to a declaration of Charles Sheeley filed in

the summary judgment proceedings below:[1]

> Prior to late 2015 the roadway was graded by Jack Humason and, I believe, by Gerald Sheeley, my late father and my predecessor in interest. To that date the roadway was never prepared or maintained to an area any wider than twelve (12) feet.
>
> In late 2015 and early 2016 I improved the road surface entirely at my expense. I moved dirt, drove on it, and watered it. The roadway, as noted above, previously was never wider than twelve (12) feet and the vast majority of the roadway was a wheel track eight (8) feet wide. There was at least one spot where there was a wider area because users drove around a rock or a large puddle. I improved the road to a width of twenty-two (22) feet. After I improved the road, there were no puddles and there was no necessity for anyone to venture off the roadway as I graded it.

CP at 121.

In the spring of 2016, Mr. Sheeley planted a jalapeno pepper crop in the south 25

feet of the portion of the easement area located on his property. According to Mr.

Sheeley, the peppers "were planted entirely outside the then existing roadway as I had

improved and widened it," and "[n]o part of the land in which the peppers were planted

was within any part of the easement that had ever been used for ingress and egress or for

a roadway." *Id.*

In late July 2016, a lawyer for the Sierackis wrote to Mr. Sheeley to advise him

that he was taking actions that impaired the Sierackis' "access easement rights and their

---

[1] Because the underlying dispute was resolved in the Sierackis' favor by summary judgment, we view the evidence and inferences in the light most favorable to Mr. Sheeley. *E.g.*, *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

rights under the Road Maintenance Agreement." CP at 197. The lawyer relied on language in the road maintenance agreement stating that "[t]he Owners agree that the Roadway"—meaning "a 60-foot wide roadway"—"shall be maintained free of obstructions" and would be developed as a gravel roadway. CP at 52. The letter took the position that "the entire 60-foot strip" identified by the easement and addressed by the road maintenance agreement "may not be impaired by a use that is incompatible with maintenance of a roadway." CP at 198. It went on to state:

> For a variety of reasons, the graveling of the road has not yet occurred, but the Sierackis have obtained bids and do intend to complete that work so that the road is consistent with the intent of the parties when the easement was granted. At this time, the Sierackis are asking that you honor the covenants and restrictions now in place on the 60-foot easement area and that you discontinue all farming activities on that area.

*Id.*

Mr. Sheeley did not respond to the letter and, on October 20, 2016, Andrew Smythe, a lawyer for the Sierackis, mailed to Mr. Sheeley a complaint asserting three claims: breach of the road maintenance agreement, misuse of easement, and trespass. The complaint was not filed at that time. The complaint alleged that the Sierackis "intend to install a gravel roadway" and that Mr. Sheeley had failed to remove his plantings as requested. CP at 4. By that time, Mr. Sheeley had harvested his pepper crop, but the remnants of the crop and underlying plastic were still in place. According to Mr.

4

Sheeley, this was because pulling up the remnants and plastic would create a problem with blowing dust.

Nineteen days after the complaint was mailed to Mr. Sheeley, a written proposal to construct a gravel roadway was prepared by Mr. Sieracki. Mr. Sieracki proposed to construct and maintain not a 60-foot wide, but a 20-foot wide roadway, at his own expense (although with an exception for human caused damage). He proposed to locate the roadway in the center of the 60-foot easement so that it would not be disturbed by activities of the holders of utility and irrigation easements that ran along the north and south sides of the easement area. His proposal emphasized:

> ***As a condition of this proposal, all obstructions to the 60 foot wide "Roadway" Easement must be removed by November 21, 2016, as the road contractor will not proceed if any structures/crops exist within the 60 foot wide zone.***
>
> ***If there are no obstructions, then it is believed construction on the Roadway can be started in about one week.***

CP at 141.

A meeting of the parties to the easement and road maintenance agreement was held to vote on Mr. Sieracki's proposal on November 11, 2016. All present, including Mr. Sheeley, agreed to the proposal, although as minutes prepared by Mr. Sieracki reflect, "Larry [Goodwin], Kathy [Humason], and Charles [Sheeley]" agreed "with the provision for written dust mitigation during the removal of plantings." CP at 105. According to Mr. Sheeley, this statement in the minutes is partially incorrect; he claims

that the dust mitigation proviso was that Mr. Sieracki agree in writing to take care of any dust created by the crop removal, for the rest of the winter. Mr. Sheeley acknowledges that subject to this proviso, he agreed at the meeting to remove the crop remnants by the November 21 date identified in Mr. Sieracki's proposal.

When Mr. Sheeley had not removed the crop remnants by November 21, the Sierackis' lawyers caused Mr. Sheeley to be served with their complaint on November 26. Mr. Smythe also called Mr. Sheeley to ask why he had not removed the crop remnants. According to Mr. Sheeley, he had not removed them because Mr. Sieracki had not yet delivered the promised agreement to control any resulting dust. After speaking with attorney Smythe, Mr. Sheeley removed the remnants of the crops on November 27. The Sierackis' contractor did not construct the road until April of the following year.

On December 30, 2016, the Sierackis' complaint was filed in Benton County.[2] According to their lawyers, this was "so that they might recover the fees incurred in getting Defendant to remove his crops." CP at 185. Six months after the Sierackis filed their complaint, in July 2017, the Sierackis moved for summary judgment on their three claims.

Among materials submitted by Mr. Sheeley in opposition to summary judgment were declarations from the owners of three of the six parcels benefitted by the easement

---

[2] Mr. Smythe's last work on the matter was performed on December 27, 2016. Other lawyers at his firm represented the Sierackis thereafter.

and road maintenance agreement stating that Mr. Sheeley's 2016 pepper crop "interfered with no one's use of the roadway or eaement [sic] nor did it interfere with anyone's ingress and egress," that it "was a temporary use of a never used part of the easement," and that "[t]he crop planted by Mr. Sheeley was actually an improvement as he removed weeds that had been growing there." CP at 145-47.

The trial court granted the Sierackis' motion for summary judgment on their claim for breach of the road maintenance agreement, repeatedly referring to Mr. Sheeley's actions in planting a pepper crop as a "technical" violation of the agreement. CP at 275. It otherwise denied the motion, observing that Washington case law provides that the owner of property subject to an easement is free to use the property in ways that do not interfere with or overburden the easement. The Sierackis' claims for misuse of the easement and trespass were later dismissed by stipulation. In orally ruling at the time of the summary judgment hearing, the trial court expressed dismay at how the matter had been handled:

> And technically under this road maintenance agreement and the facts where it's been acknowledged by [Mr. Sheeley] that at least part of that area was used at times for ingress and egress, that the [Sierackis] are entitled to a summary judgment regarding the violation of the road maintenance agreement.
> And I say that, I guess, somewhat reluctantly, because it seems to me that this was a case that I would have hoped would have been resolved well short of this matter ever coming to court.
> I think there's been a substantial, potentially even greater, I guess, incurring of attorneys' fees over something that from the record, it appears to me, was pretty much resolved prior to this lawsuit ever being filed.

7

> While—again, I think it is technically a violation of this road maintenance agreement by [Mr. Sheeley]. So I am, as I said, somewhat dismayed that it ended up getting to this point.
> You had to file a lawsuit to accomplish something that had already been accomplished.

CP at 282.

Following the partial granting of their motion for summary judgment, the Sierackis sought to recover $15,146 in attorney fees from Mr. Sheeley. His written opposition argued that the Sierackis were entitled at most to the $2,900 in attorney fees incurred before Mr. Sheeley removed his crop remnants on November 27. The trial court awarded only $2,900, finding only that amount to be reasonable. The Sierackis' motion for reconsideration was denied. The Sierackis never proposed written findings of fact and conclusions of law supporting the fee award nor did they argue in the trial court that such findings and conclusions needed to be prepared.

A few weeks after the trial court's oral ruling on their original request for attorney fees, the Sierackis moved for $3,940.00 in supplemental attorney fees incurred in preparing, filing, and arguing the original fee motion. At the hearing on the motion for supplemental fees, the trial court refused to award $1,000.00 for five hours of travel time, found $200.00 an hour to be a reasonable amount, and awarded $558.60, that being 19 percent of the remaining fees incurred, since it had awarded only 19 percent of the fees requested by the original motion.

8

Once again, the Sierackis did not propose written findings and conclusions.  They appeal.

ANALYSIS

The Sierackis argue the trial court erred when it refused to award them all of the attorney fees they requested originally and supplementally.  They ask us to reverse its fee award and remand with directions to award them all of the fees requested.  Am. Br. of Appellants at 19.

Washington law generally provides for an award of attorney fees when authorized by contract, a statute, or a recognized ground of equity.  *Excelsior Mortg. Equity Fund II, LLC v. Schroeder*, 171 Wn. App. 333, 345, 287 P.3d 21 (2012).  The attorney fee provision in the road maintenance agreement is bilateral, so the contractual right, rather than RCW 4.84.330, is the source of any entitlement to fees.  *Id.*; *Cornish Coll. of Arts v. 1000 Va. Ltd. P'ship*, 158 Wn. App. 203, 231, 242 P.3d 1 (2010) ("When a contract includes a bilateral attorney fees provision, 'it is the terms of the contract to which the trial court should look to determine if such an award is warranted.'" (quoting *Kaintz v. PLG, Inc.*, 147 Wn. App. 782, 790, 197 P.3d 710 (2008)), *review denied*, 171 Wn.2d 1014, 249 P.3d 1029 (2011).  The fee provision in the roadway maintenance agreement states:

9

    8.    Attorneys Fees/Court Costs.  The prevailing party in any
action to enforce or defend the terms of this Agreement or to foreclose a
lien shall be awarded their reasonable attorney fees and all costs of
litigation.

CP at 54.

Whether a party is entitled to attorney fees under a contract is a question of law

that this court reviews de novo. *Ethridge v. Hwang*, 105 Wn. App. 447, 459-60, 20 P.3d

958 (2001).  Whether the amount of fees awarded was reasonable is reviewed for an

abuse of discretion, however.  *Baker v. Fireman's Fund Ins. Co.*, 5 Wn. App. 2d 604,

613, 428 P.3d 155 (2018), *review denied*, 192 Wn.2d 1016, 438 P.3d 111 (2019).  A trial

court has broad discretion in determining the amount of attorney fees to be awarded.

*Albertson's, Inc. v. Emp't Sec. Dep't*, 102 Wn. App. 29, 45, 15 P.3d 153 (2000).  "In

order to reverse an attorney fee award, an appellate court must find the trial court

manifestly abused its discretion."  *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d

527, 538, 151 P.3d 976 (2007).  "That is, the trial court must have exercised its discretion

on untenable grounds or for untenable reasons."  *Id.*

Mr. Sheeley concedes that in light of the trial court's unappealed finding of a

technical violation of the road maintenance agreement, the Sierackis were entitled to an

award of attorney fees.  But that does not mean they were entitled to the amount they

requested.  The Sierackis' fee request relied on the lodestar method.  The court must limit

the lodestar to hours reasonably expended and must award fees only for time spent on

10

issues for which fees are authorized, not time spent on other issues (here, misuse of

easement and trespass), even if the claims overlap or are interrelated. *Loeffelholz v.*

*Citizens for Leaders with Ethics & Accountability Now*, 119 Wn. App. 665, 690, 82 P.3d

1199 (2004). The only exception is if no reasonable segregation can be made. *Id.* The

party seeking fees bears the burden of segregating fees for time spent on issues for which

fees are authorized and of proving the reasonableness of the amount of fees requested.

*Id.*; *Mahler v. Szucs*, 135 Wn.2d 398, 433-34, 957 P.2d 632 (1998).[3]

Complete billing documentation is the starting point under the lodestar method but

is never dispositive on the issue of the reasonableness of the hours. *Scott Fetzer Co. v.*

*Weeks*, 122 Wn.2d 141, 151, 859 P.2d 1210 (1993). The trial court, instead of merely

relying on the billing records of the plaintiff's attorney, must make an independent

decision as to what represents a reasonable amount for attorney fees. *Id.* (quoting

*Nordstrom Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987)).

The foundation of a lodestar award is built on objective criteria, but adjustments to

the award are permitted to account for a number of subjective factors. *Id.* at 150.

Whether a dispute could have been resolved earlier and at less expense is a consideration

that we expect trial courts to apply. In *Scott Fetzer*, for instance, the court explained that

---

[3] In orally announcing its fee award for only the fees incurred before November 27, the trial court stated that it did not believe those fees could be segregated. It never addressed whether fees incurred thereafter could have been segregated.

where a trial court ultimately dismissed a complaint for lack of personal jurisdiction, the prevailing defendant should recover no more than the fees it would have incurred had it presented its defense as soon as the grounds became available to him, regardless of the fees actually incurred. *Id.* at 149 (quoting *Scott Fetzer Co. v. Weeks*, 114 Wn.2d 109, 120, 786 P.2d 265 (1990)). And in *Nordstrom*, our Supreme Court held that if a case is one that is very likely to be won, the trial court should consider whether lawyers spent undue time preparing the case. 107 Wn.2d at 744. Trial courts are uniquely suited to adjust a lodestar request for the amount of time required for a competent practitioner to resolve a dispute.

The relationship of the amount of fees requested to what is involved in a dispute is another subjective factor that, while not controlling, "is a vital consideration when assessing their reasonableness." *Scott Fetzer*, 122 Wn.2d at 150.

The Sierackis emphasize the fact that when an award of fees and costs is substantially less than requested, the trial court must provide some explanation of how it computed the award and why the amount is less than requested. Am. Br. of Appellants at 12. They complain that here the trial court did not, and argue that the failure to explain the fee award is a basis for awarding them all of their requested fees. But in *Progressive Animal Welfare Society v. University of Washington (PAWS)*, the case on which the

12

Sierackis ultimately rely,[4] the plaintiffs assigned error to the trial court's inadequate explanation and in connection with that assignment of error sought a remand, so that the court could enter findings sufficient for appellate review. 54 Wn. App. 180, 186-87, 773 P.2d 114 (1989), *rev'd on other grounds*, 114 Wn.2d 677, 790 P.2d 604 (1990). The Sierackis did not ask the trial court to provide a more complete explanation, they did not present proposed findings of fact and conclusions of law, and they do not assign error to the trial court's failure to enter findings and conclusions. They do not ask us to remand. The trial court's failure to enter findings has not been properly raised for review and, since we can identify tenable bases for the trial court's award, we will not remand for the entry of findings sua sponte.

At the hearing on the original fee request, Mr. Sheeley's lawyer raised several reasons why the Sierackis should be awarded an amount of fees that was "minimal at most." Report of Proceedings at 13. One was the fact that the Sierackis pursued a complaint that asserted three claims, even after the remnants of the pepper crop had been removed. He pointed out that only their claim based on the road maintenance agreement

---

[4] The Sierackis cite *Snoqualmie Police Association v. City of Snoqualmie*, 165 Wn. App. 895, 273 P.3d 983 (2012), which in turn cites *Absher Construction Co. v. Kent School District No. 415*, 79 Wn. App. 841, 917 P.2d 1086 (1995). *Absher* relied on *PAWS*, which is the only one of the three cases that explains that the trial court's error in such a situation is in failing to provide a sufficient explanation, it is not in refusing to award the fees. Where the error is made and assigned, the remedy is to remand so that the court may provide its explanation.

supported an award of attorney fees. He argued that the Sierackis could have pursued a simpler action, seeking only the fees, in district court. He read to the trial court from its oral ruling on summary judgment, reminding the court that it had been dismayed by the Sierackis' handling of the matter.

Tenable bases existed for the trial court's award. The Sierackis failed to present any evidence that Mr. Sheeley's crop interfered with use of a roadway in the easement area at the time their lawyer wrote a letter demanding that Mr. Sheeley remove his crops and later prepared a complaint. At those times, Mr. Sieracki had not yet presented a road construction proposal, let alone convened a meeting of the owners of the affected properties to approve its construction. The affected parties had lived with a roadway with an 8 to 12 foot width for 13 years before Mr. Sheeley widened it, possibly enhancing the Sierackis' ability to construct a gravel road at a reasonable cost. If there was some urgency in constructing the gravel road beginning on November 21, 2016 (and none is shown), there is no explanation why the Sierackis did not present a proposal and convene a meeting of the affected parties at an earlier time. Mr. Sheeley presented a colorable basis for keeping his crop remnants and plastic in place until it was necessary for them to be cleared, and he removed the crop remnants on November 27. There was a reasonable basis for the veteran trial judge to find that competent counsel could have resolved the issue for $2,900 or less.

14

No. 35938-7-III
*Sieracki v. Sheeley*

Given the reasonable amount of the original award, it was appropriate for the trial court to discount the supplemental fee request accordingly. And Washington courts hold that travel time is generally not compensable, except when a trial court awards attorney fees as a sanction for causing unnecessary travel. *Roberson v. Perez*, 123 Wn. App. 320, 346-47, 96 P.3d 420 (2004); *see also Mayer v. STO Indus., Inc.*, 156 Wn.2d 677, 691-92, 132 P.3d 115 (2006).

Both the Sierackis and Mr. Sheeley request an award of reasonable attorney fees on appeal. Neither party has prevailed in enforcing or defending the terms of the road maintenance agreement. We deny both requests.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, A.C.J.

_____
Korsmo, J.

15